UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

IN RE:

DAVID RAOUL MAES and      Case No. 05-51160
SHARON DIANE MAES
       Debtor(s)     Chapter 7

MARIANNE F. MAES,
       Plaintiff     Ap. No. 05-5060

vs.

DAVID RAOUL MAES
       Defendant

## MEMORANDUM OPINION

THIS CORE PROCEEDING comes before the Court on Plaintiff Marianne F. Maes's ("Plaintiff") Complaint under Section 523(a)(5) and Section 523(a)(15), and Defendant/Debtor David Raoul Maes's ("Defendant") Answer and Counterclaim. The Plaintiff is seeking to have certain debts totaling approximately $29,000.00 deemed nondischargeable. Pursuant to the parties Separation Agreement the Defendant assumed the liabilities for a Discover Credit Card, originally in the joint names of Plaintiff and Defendant, and a debt owed to Bank One for a fifth wheel vehicle.[1]

An evidentiary hearing was held on March 21, 2006. The Plaintiff elected not to appear at the trial and instead preserved her testimony through an evidentiary deposition which was

---

[1] The Plaintiff and Defendant reached an Agreed Order Regarding Partial Settlement of Issues regarding other debts that were originally at issue in the Complaint.

1

submitted to the Court. The Plaintiff was represented by counsel at the hearing, who advocated on the Plaintiff's behalf. The Defendant appeared with counsel and testified before this Court. Based upon the testimony of the parties, the statements of counsel and the entire record in this case, this Court finds that the debts in question are DISCHARGEABLE.

## FINDINGS OF FACT

The Defendant and his wife filed for Chapter 7 bankruptcy protection on July 13, 2005. The Plaintiff filed the present nondischargeability action on October 31, 2005.

The parties marriage ended in divorce after 13 years in November 2003. At the time of their divorce, the parties were residing in Colorado. Pursuant to the parties' Separation Agreement, the Defendant quit claimed the marital home, which they had purchased within a year of the divorce for $280,000.00, to the Plaintiff, who then assumed the mortgage obligations on the home. The Defendant further agreed to pay the Plaintiff monthly maintenance of $200 for six years. Plaintiff was also to receive 26.4% of the Defendant's military retirement pay. The Defendant and Plaintiff divided their personal property, and the Defendant received a fifth wheeler, the debt on which is now at issue. The parties similarly split their marital debts, and the Defendant took responsibility for the Discover Credit Card in both parties names, which at the time had a balance of approximately $11,250.00.

**David Raoul Maes**

The Defendant is 45 years old and served on active duty in the military for 24 years before retiring. He was declared 20% disabled by the military due to knee problems but is otherwise in good health. Following his retirement from the military, he found work with the Department of Homeland Security where he was employed as a screening manager, responsible

for federalizing the Denver International Airport. Following his divorce from the Plaintiff in November 2003, the Defendant married Sharon Maes. The couple moved to Kentucky in August of 2004 in order to be closer to Sharon's children, Casey, age nine, and Tyler, age six. Sharon Maes currently has joint custody of her children, who spend approximately 51% of the time with the Defendant and Sharon Maes.

The Defendant is currently employed for the Kentucky State Police as a police dispatcher and primarily works third shift, from 8 p.m. to 6 a.m. Additionally, the Defendant is on 24 hour call on an as needed basis. He earns a gross salary of $1915.00 per month and nets approximately $680.00 every two weeks. He is not be eligible for a raise for at least several more years. It does not appear likely that the Defendant would be able to attain employment as a police trooper due to various physical limitations he has stemming from his military career. In addition to his salary, the Defendant receives military retirement of $965.00 per month and military disability of $218.00 per month. Sharon Maes works for the Department of Homeland Security at the Paducah Airport as a supervisor with a gross salary of $3,880.00 per month. The Defendant and his wife have a combined monthly net income of $5,466.00.[2]

The Defendant submitted detailed estimates of his family monthly expenses, which total $5,290 per month.. These monthly expenses include: $1,005.00 for housing; grocery and food expense of $774.41; monthly transportation expenses of $358.00; $246.19 per month for maintenance to the Plaintiff and child support for Sharon Maes' children; $590.00 per month for car payments; and $450.00 per month for divorce and bankruptcy attorney fees, among other

---

[2] In addition to the taxes taken out of their salaries, the Defendant and his wife also have additional non-mandatory deductions taken from their pay for union dues, insurance, retirement and thrift savings.

expenses. The maintenance payments to the Plaintiff will end in 2009, and the attorney payments will likely be paid in full in the next few years.

The Defendant and his wife own several assets, including the home they purchased upon moving to Kentucky valued at approximately $139,000.00, on which there are two mortgages. They also own two cars with a combined value of $26,850.00, one of which they own free and clear and they other on which they owe approximately $23,700.00. Based on the submitted income and expenses, the Defendant has approximately $176.00 per month in disposable income. The Defendant and his wife discharged approximately $100,000.00 in their bankruptcy.

**Mariane Maes**

The Plaintiff is 45 years old. She had been in the military but was declared 100 percent permanently disabled in 1996. She currently suffers from back problems, migraines, RSD and is in remission from leukemia. The Plaintiff is currently under a physician's care and taking medications for all of these conditions. She is unable to work. She receives military disability of $2,383.00 per month, $492.00 per month through the Defendant's military pension, $200 maintenance from the Defendant, and Social Security of $846.00, totaling $3,894.00 income.

In the parties' divorce, the Plaintiff was awarded the marital home, and the Defendant quit claimed his interest to the Plaintiff in 2003. The Plaintiff subsequently quit claimed the house to her friend as collateral to him for financial assistance he provided to her.[3] The Plaintiff provided to the Court two promissory notes stating that her friend loaned her $34,140.00. The Plaintiff currently resides with her friend. The home quit claimed to her friend is currently

---

[3] The Plaintiff has requested that the name of her friend be kept confidential, to which the Defendant has agreed.

rented, and the friend receives the rental income. Plaintiff, however, continues to pay the mortgage of $1,700.00 per month on her former home.

Including her mortgage payment, the Plaintiff has monthly expenses of $3,536.57, including food expense of $225.00, utility expenses of $400, a vehicle lease of $413.00, medication expense of $250.00, car insurance of $45.00, among other expenses. The Plaintiff additionally submitted bank statements in which she labeled the various deposits and withdrawls. Although certain withdrawls are labeled for "food" or "yard," other items are labeled "confidential." For example, in her bank statement for August 1 thorugh August 31, 2005, the Plaintiff has eight withdrawls labeled "confidential" totaling $724.12. The Plaintiff declined to explain why she was continuing to make the mortgage payment on the house, nor why she was not receiving the rental income on the house. Similarly, she would not divulge the nature of the "confidential" payments. The Plaintiff was asked repeatedly who her friend is and what the nature of their relationship is, but she once again refused to answer the questions. The Court warned the Plaintiff's counsel that his client's failure to be candid with the Court could harm her case because it would not permit the Court to make a thorough evaluation. The Plaintiff's counsel stated that Plaintiff understood the possible ramifications resulting from her failure to appear at the trial and place herself on the witness stand.

Plaintiff has assets totaling $1,265.00, which consist of clothing, furniture and bank accounts. Her current liabilities consist of a $10,000.00 debt to her divorce attorney, a loan from her life insurance policy of $900, a Discover Card with a balance of $3,300.00, and any liabilities owed to her friend. The Plaintiff is eligible for relief under the Bankruptcy Code.

5

CONCLUSIONS OF LAW

The Plaintiff raised two grounds for nondischargeability, 11 U.S.C. §§523(a)(5) and (15). Each provision will be examined separately.

**§523(a)(5)**

11 U.S.C. §523(a)(5) states in relevant part

> A discharge under section 727...of this title does not discharge an individual debtor from any debt to a spouse, former spouse... for alimony to, maintenance for, or support of such spouse...in connection with a separation agreement, divorce decree...or property settlement agreement, but not to the extent that such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

An award stemming from a divorce decree or separation agreement is nondischargeable under §523(a)(5) only if it is actually in the nature of maintenance or support. *In re Sorah,* 163 F.3d 397, 400 (6th Cir. 1998). The challenging party has the burden of showing that a debt is nondischargeable. *Id.* To do this, the challenging party must first show that the parties intended to create a support obligation and that the obligation actually provides necessary support. If the challenger can show the first two elements, the court is then charged with determining if the obligation is so excessive as to be "unreasonable under traditional concepts of support." *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir. 1993)(citing *In re Calhoun*, 715 F.2d 1103, 1109-10 (6th Cir. 1983). If the court determines the debt in question is unreasonable, the court may then discharge a portion of the debt to the extent necessary. *Id.*

Although it is required that the state court or parties intended to create a support obligation, a decision on whether an obligation is "in payment of alimony, maintenance, or

6

support of the spouse, [is] determined under bankruptcy law considerations." *In re Calhoun*, 715 F.2d at 1107-1108.  A court may also consider "well developed state law principles of domestic relations" in making such a determination.  *Id.*; *In re Paulson*, 27 B.R. at 331.  An underlying obligation to provide support must necessarily arise from a state court decision, and a federal court is not at liberty to create a support obligation where none existed.  Simply because state domestic relations law may provide guidance, however, it does not follow that an award is dischargable because it does not fit within the guidelines established by the state.  Such a determination would be second-guessing the actions of a state court.  Instead, the bankruptcy court is charged with looking at a state court judgment or ruling and deciding if it were *intended* to be alimony or support.

Applying this standard to the present case, the Plaintiff must show that the Defendant's assumption of the debts in question was meant to create a support obligation. From a plain reading of the Separation Agreement it does not appear that the debt assumptions in question were intended to provide support.  To begin, several other sections of the Separation Agreement deal with maintenance and support.  The debts in question are listed separately , under the heading "Responsibility for Debts."  Further, while the Plaintiff is currently disabled, it appears that the state court and the parties intended her to receive any necessary support through maintenance payments made to her by the Defendant as well as the retirement income that she is entitled to under the terms of the Separation Agreement.  It appears that the assumption of these debts arose simply by dividing the liabilities.

Even if this Court did find that the debt assumption by the Defendant was intended to be support, the Plaintiff cannot show that the debt assumption has the effect of providing her with

7

support necessary to ensure her basic daily needs. According to the Plaintiff's income and expenses, she has $357.43 disposable income. Additionally the Plaintiff is paying $1700 a month mortgage on a home that she no longer owns, and she has been unable to explain adequately why she is doing this. If Plaintiff were to rent a house or apartment her monthly housing expense would most likely decrease. Further, Plaintiff is unable to explain certain monthly expenditures. Based on these facts, and the Plaintiff's unwillingness to explain why she quit claimed a house but continues to pay the mortgage, this Court cannot find that the debt assumption by the Defendant is necessary to allow Plaintiff to attain her basic daily living needs. The Plaintiff cannot sustain the burden under §523(a)(5), and the debt cannot be found nondischargeable on this basis.

### §523(a)(15)

Under 11 U.S.C. §523(a)(15), a discharge in bankruptcy does not apply to any debt that is

> ...not of the kind described in paragraph (5) that is incurred by
> the debtor in the corse of a divorce or separation...unless the
> (A) the debtor does not have the ability to pay..; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs
> the detrimental consequences to a spouse...

The Sixth Circuit has developed a detailed analysis in its discussion of this bankruptcy code provision. To begin, the Creditor-plaintiff must show that (1) the debt in question is not a nondischargable debt under 523(a)(5), and (2) the debt was incurred in the course or in connection with a divorce or separation. *In re Smither,* 194 B.R. 102, 107 (Bankr. W.D. KY 1996).

This preliminary standard is clearly met in this case. This Court has determined above

8

that this debt is not nondischargeable under § 523(a)(5). Further, the parties agree that the debts were incurred in the course of their divorce.

With the Plaintiff's initial burden satisfied, the Defendant is now charged with the burden of showing that he is either (1) unable to pay the debt or (2) a discharge of the debt would result in a benefit to the debtor that outweighs any detrimental consequences to the creditor-spouse. *In re Smither,* 194 B.R. *at* 107. Although a creditor typically bears the burden of proving all elements of a discharge exception, §523(a)(15) allows a debtor to counter with certain statutory defenses. Therefore after the creditor ex-spouse has satisfied the above 2-prong test, the debtor ex-spouse bears the burden of going forward with the above-stated defenses. *Id.* Although the debtor carries the burden of moving forward with the defenses, both the debtor and the creditor must present evidence regarding the ramifications they will suffer if a discharge is either granted or denied. *Id.*

The Court first looks to see if the Debtor is able to pay the debt at issue. According to *Smither,* the Court must consider: (1) the amount of debt sought to be held nondischargeable; (2) the debtor's current income and the value and nature of any property retained after the bankruptcy filing; (3) the amount of reasonable and necessary expenses the debtor must incur for his support and the support of his dependents; and (4) a comparison of the debtor's property and current income with his reasonable and necessary expenses. *Smither,* 194 B.R. at 108.

As set forth in the facts, the debt the Plaintiff is seeking to have held nondischargeable is for approximately $29,000.00. The Defendant and his wife have a combined current monthly income is $5,466.00 net. Following his discharge, the Defendant retained a home, valued at approximately $139,000.00, and two vehicles, valued at approximately $26,850.00. The Court

finds that the expenses submitted by the Defendant of $5290.00 are reasonable. Based on his income, the Defendant has $176.00 per month in available disposable income. If cannot be found, therefore, that the Defendant is unable to pay at least a portion of these debts.

Defendant may also raise the defense that a discharge would result in a personal benefit to him that would outweigh the detriment to the Plaintiff. *Smither,* 194 B.R. at 110. Both parties must offer evidence as to the impact that a discharge would have on their lives. The Court is required to compare the respective standard of living of both parties and determine who will "suffer more" if a discharge is granted. *Id.* If the Defendant's standard of living would be equal to or better then the Plaintiff's if the debt were not discharged then the debt should be found nondischargable. If, on the other hand, the Defendant's standard of living would fall materially below the Plaintiff's standard of living, then the Court should discharge the debt. *Id.* In determining the parties' respective standards of living, the Court should consider the following nonexhaustive list of factors as to both parties: (1) amount of debt involved, including payment terms; (2) current income; (3) current expenses; (4) current assets, including any exempt assets; (5) current liabilities, excluding those discharged in bankruptcy; (6) health, job skills, training, age and education; (7) Debtor's dependents, notably their ages and special needs; (8) any financial changes that have occurred since the divorce to either party; (9) the amount of debt discharged in bankruptcy; (10) if the creditor may seek relief under the Bankruptcy Code; and, (11) if both parties have acted in good faith throughout the course of the bankruptcy and the litigation concerning the 11 U.S.C. 523(a)(15) issue. *Id.* at 111. As stated, the above list is not the end of the inquiry since the court may consider other factors it deems relevant. *Id.*

The necessary information regarding the income and expenses of both parties is laid out in detail in the fact section above. While the Debtor has provided a clear picture of his standard of living, the Plaintiff has not been as forthcoming. The Court agreed that the Plaintiff did not have to appear at trial and allowed her to submit her testimony through an evidentiary deposition. Fed. R. Bankr. Pro. 7032(a)(3)(B). In her evidentiary deposition, the Plaintiff refused to answer a number of questions, which prevents this Court from forming a clear and accurate picture of the Plaintiff's standard of living. It was never adequately explained to this Court why the Plaintiff is paying a $1,700 mortgage for a home that she no longer owns or lives in, or why she is not receiving the rental income from that property. It is unclear as to what support the Plaintiff's friend provides her in terms of her daily living expenses. Further, the Plaintiff was unwilling to explain where much of her money goes each month, instead only stating that such transfers are "confidential." The Court is sympathetic to the Plaintiff's health issues, but this Court cannot base a decision of nondischargeability on that factor alone when it appears that the Plaintiff has more than adequate funds on which to live.

Based on the evidence before this Court, it must find that the if this debt were held nondischargeable then the Defendant's standard of living would materially fall below that of the Plaintiff's. Without an adequate explanation of why the Plaintiff is continuing to pay the mortgage or where certain payments are going, this Court can only conclude that the Plaintiff is living at a much higher standard of living than the Defendant. As such, if the debt were found nondischargeable, the Defendant's standard of living would fall materially below that of the Plaintiff's.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the debts owed as to

any obligations for Discover Credit Card and Bank One for a fifth wheeler are

DISCHARGEABLE.

    A separate Order consistent with the foregoing has been entered in accordance with the

Federal Rule of Bankruptcy Procedure 9021.